**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**KRISTIN A. MULHOLLAND**
Office of the Public Defender
 Appellate Division
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JONATHAN R. SICHTERMANN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL T. IVY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1207-CR-331 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Thomas P. Stefaniak, Jr., Judge
Cause No. 45G04-1106-FA-29

**February 25, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Michael T. Ivy appeals his sentence for battery as a class A felony. Ivy raises one issue which we revise and restate as whether his sentence is inappropriate in light of the nature of the offense and the character of the offender. We affirm.

The relevant facts from the stipulated factual basis follow. On June 25, 2011, Ivy, who was born on February 23, 1988, his daughter McKenzie Smalley, who was born on April 1, 2011, McKenzie's mother Dyane Smalley,[1] and McKenzie's two sisters resided in an apartment in Lake County. Ivy wanted to smoke some "gas station weed" in his bedroom while he watched television.[2] Appellant's Appendix at 48. McKenzie was in her bouncer in the bedroom, and Ivy moved the bouncer into the living room. McKenzie would not stop crying in the living room, and Ivy became angry at her for crying. Ivy crouched down in front of McKenzie and placed his right knee hard into her stomach. The pressure of Ivy's knee caused McKenzie to defecate in her diaper, and the "defecation oozed out of the diaper far up her back." Id. Ivy saw McKenzie raise up her arm and gasp for air after he kneed her, and her eyes rolled back into her head. Ivy then cleaned McKenzie, placed her in the bouncer and continued to smoke weed for another twenty to thirty minutes in his bedroom while McKenzie remained in the living room. Ivy returned to the living room, found McKenzie unresponsive, and violently shook her. As a result of the above acts, McKenzie suffered extensive head injuries with massive intracranial hemorrhages, right epidural hemorrhage at the right frontal area, contusion hemorrhages over the right and left side of the cerebrum and cerebellum, fresh

---

[1] The PSI spells Dyane Smalley's name as Deonna.

[2] At the sentencing hearing, Ivy's counsel indicated that "gas station weed" was synthetic marijuana. Transcript at 27.

hemorrhages in the soft tissue along the optic nerve of the posterior aspect of the right and left eyeball, contusions over the chest wall, and rib fractures. She died as a result of her injuries.

On June 29, 2011, the State charged Ivy with Count I, battery as a class A felony; Count II, neglect of a dependent as a class A felony; Count III, aggravated battery as a class B felony; and Count IV, neglect of a dependent as a class B felony. On July 27, 2011, Ivy pled not guilty. On September 20, 2011, in addition to the foregoing charges, the State charged Ivy with murder, and Ivy pled not guilty.

In October 2011, Ivy declined the setting of a jury trial three times. On November 4, 2011, Ivy filed a *pro se* motion to dismiss Counts I, II, III, and IV, and argued that the charges against him were false. The court refused the motion because Ivy was represented by counsel. On November 30, 2011, Ivy filed a verified motion to suppress evidence and argued that "all evident [sic] and miscellaneous documents in the State of Indiana, Discovery is without merit." Id. at 39.

At a December 6, 2011 hearing, Ivy's counsel moved to withdraw his appearance which the court granted. The court then appointed a public defender. Ivy filed a *pro se* motion to suppress evidence then withdrew the motion in open court indicating that he wished to speak with his public defender prior to proceeding on the motion. On January 4, 2012, the court scheduled a jury trial for June 11, 2012, and Ivy was advised of the State's right to trial *in absentia*.

On May 3, 2012, Ivy pled guilty to Count I, battery as a class A felony, and the State dismissed the remaining charges. The plea agreement stated that the parties agreed

3

that they would be able to fully argue their respective positions but that the sentence would be capped at forty years in the Department of Correction. The court accepted the plea agreement.

At the sentencing hearing, Ivy acknowledged that McKenzie's sleeping mother was present in the house and that she did not wake up when McKenzie was crying.[3] Ivy also stated:

> I want to apologize for the things that I said and the things that I did. And I apologize to my family and I want to – I will do anything, anything to get another chance to show to the State and to you, Your Honor, and my family that I'm not this bad parent.

Transcript at 29. When asked by the trial court how often he smoked marijuana, Ivy stated "like every blue moon." Id. When asked to clarify, he said that he smoked "out of a week like three days out of the week that I smoked gas station marijuana . . . ." Id. Ivy also indicated that he was used to smoking synthetic marijuana.

The court found the facts that Ivy pled guilty and accepted responsibility as mitigators. The court expressly rejected the "mitigating factor proffered by the defense that [Ivy] has no criminal history and has lead a law-abiding life for a substantial period before the commission of this crime, because [Ivy] has admitted to regular marijuana usage." Id. at 34. The court found Ivy's position of trust as a significant aggravating factor. Specifically, the court stated:

> In aggravation, the Court finds that [Ivy], as the father of this child, this eleven week old child known as McKenzie Small[e]y, was in a position of trust as the father, and had the care and custody of this child at a time in

---

[3] The prosecutor read a letter from McKenzie's mother which read in part: "Knowing she'd be here if you would have cared enough to just wake me up." Transcript at 20. A letter from McKenzie's grandmother asked: "Why didn't [Ivy] wake up [McKenzie's mother]?" Id. at 22.

4

Mr. Ivy's life, where he was already the father of five other children; had experience with the care of these children and chose to consume gas station weed or synthetic marijuana at a time after he had been arrested for two past regular marijuana charges and at a time after he went to rehab, as ordered by a Judge at the Hammond City Court. This position of trust is a significant aggravating factor because an eleven week old child is incapable of doing anything for herself and relies solely on others to survive.

Id. at 35. The court found that the aggravating factor substantially outweighed the mitigating factor and sentenced Ivy to forty years in the Department of Correction.

The issue is whether Ivy's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Ivy argues that his "lack of a criminal record demonstrates that he has been leading a law-abiding life up until this time" and that "[t]his should be considered as a favorable factor in evaluating his character." Appellant's Brief at 7. Ivy also points out that he pled guilty.[4] With respect to the nature of the offense, he states merely that the battery of McKenzie falls within the statutory definition of the crime and that the sentence for a crime of this class is a term between twenty and fifty years with an

---

[4] Ivy also argues that he "deserves to have mitigating weight extended to his guilty plea." Appellant's Brief at 7. As previously mentioned, the court found the facts that Ivy pled guilty and accepted responsibility as mitigators. To the extent that Ivy argues that the trial court improperly assessed the weight to be assigned to his guilty plea as a mitigating circumstance, we note that the argument is, in essence, a request for this court to reweigh that factor, which we may not do. See Anglemyer v. State, 868 N.E.2d 482, 490-491 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007).

advisory sentence of thirty years. Ivy also appears to argue that given the nature of the offense, the maximum sentence under the plea agreement was inappropriate. The State argues that Ivy's sentence is not inappropriate in light of the brutal attack and his poor character.

Our review of the nature of the offense reveals that Ivy wanted to smoke some "gas station weed" in his bedroom while he watched television. Appellant's Appendix at 48. Ivy became angry with his daughter, McKenzie, who was less than three months old, when she would not stop crying. While McKenzie's sleeping mother was present in the residence, Ivy placed his right knee hard into McKenzie's stomach causing her to defecate in her diaper. McKenzie raised her arm, gasped for air, and her eyes rolled back into her head. Ivy then left McKenzie in the living room and smoked marijuana for twenty to thirty minutes. When Ivy returned to the living room and found McKenzie unresponsive, he violently shook her. As a result of these acts, McKenzie suffered extensive injuries and died.

Our review of the character of the offender reveals that Ivy pled guilty to battery as a class A felony ten months after the initial charges were filed, and the State dismissed four other charges including murder. Ivy apologized at the sentencing hearing. However, the following exchange also occurred:

Q. How do you feel knowing that you killed your daughter?

A. Oh, it hurts me to death, Your Honor. It hurts me.

Q. Sure doesn't seem like it. . . .

6

Transcript at 33. The presentence investigation report (the "PSI") indicates that Ivy used marijuana two years ago and that he had never tried any other illicit substances. According to the stipulated factual basis, Ivy smoked "gas station weed." Appellant's Appendix at 48. At the sentencing hearing, Ivy admitted to using synthetic marijuana three days a week, that he had been smoking it for "probably like two months," and that he was used to smoking it. Transcript at 29. He testified that he had to attend rehab after he was arrested for marijuana possession in 2009.

The PSI indicates that Ivy does not have a juvenile history or adult convictions. He was charged with minor in possession, illegal consumption of an alcoholic beverage, possession of "Marijuana/Hash Oil/Hashish," disregarding a stop sign, and driving while suspended, but these charges were dismissed. Appellant's Appendix at 59. Ivy was also charged with possession of "Marijuana/Hash Oil/Hashish" and received a conditional discharge. Id. Ivy has five other children by three different women. After due consideration, we cannot say that the sentence imposed by the trial court is inappropriate in light of the nature of the offense and the character of the offender.

For the foregoing reasons, we affirm Ivy's sentence for battery as a class A felony.

Affirmed.

BAILEY, J., and VAIDIK, J., concur.

7